[L. A. Nos. 27944-27952.   In Bank.   Nov. 15, 1965.]

COUNTY OF RIVERSIDE, Plaintiff and Respondent, v.
PALM-RAMON DEVELOPMENT CO., Defendant and
Appellant.

(And 8 other cases.)*

*County of Riverside v. Indian Land Development Co., L.A. 27945;
County of Riverside v. Pitts Indian Avenue, Inc., L.A. 27946; County of
Riverside v. Samuel Sontag et al., L.A. 27947; County of Riverside v.
Palm Springs III Development Co., L.A. 27948; County of Riverside v.
Palm Saturnino Development Co., L.A. 27949; County of Riverside v.
Mobile Hacienda Park Co., L.A. 27950; County of Riverside v. Palm
Springs Trailer Village, Inc., L.A. 27951; County of Riverside v. Louis
Dubin et al., L.A. 27952.

Simon & Simon, Saul Ruskin and Francis H. O'Neill for Defendants and Appellants.

Ray T. Sullivan, Jr., County Counsel, and Richard J. Lawrence, Deputy County Counsel, for Plaintiff and Respondent.

Thomas C. Lynch, Attorney General, Dan Kaufmann, Assistant Attorney General, Edward P. Hollingshead and Walter J. Wiesner, Deputy Attorneys General, Harold W. Kennedy, County Counsel (Los Angeles), and A. R. Early, Deputy

County Counsel, as Amici Curiae on behalf of Plaintiff and Respondent.

BURKE, J.—In these nine cases, consolidated for trial and appeal, defendant taxpayers appeal from judgments for plaintiff county in actions brought for the collection of property taxes for the tax year 1961-1962 on possessory interests in certain tax-exempt land and the improvements thereon. The sole issue is whether the method of assessment followed by the county assessor and approved by the county board of equalization was correct and permissible under applicable law, and particularly under the principles set forth and the views expressed by this court in *De Luz Homes, Inc.* v. *County of San Diego* (1955) 45 Cal.2d 546 [290 P.2d 544], and in certain other cases decided concurrently with *De Luz.*[1] As will appear, the facts of these cases do not parallel those in *De Luz* (and companion cases); and we have concluded that upon the record here the assessor's method was permissible, fair and realistic, and that the judgments should be affirmed.

Fee title to the involved tax-exempt land is held in trust by the United States of America for the benefit of certain Indians living in the Palm Springs area, where the land is located. During the years 1959 and 1960 the government leased the land to defendant taxpayers. In most cases the term of the lease was for 25 years, with an option to the lessee to extend it for an additional 25 years. It was contemplated that the property would be developed, subleased, and rented to tenants for commercial or professional usage, with resulting production of income during the terms of the leases.

The leases provided that all existing improvements and those subsequently constructed on the land by lessees would become the property of the owners of the underlying fee; and there was a provision for payment to the Indian owner of a percentage of the gross income (generally ranging from 20 per cent to 30 per cent) derived by lessee from the property, but with a minimum annual rent required closely approximating 8 per cent of the appraisal by the Bureau of Indian

---

[1]*Fairfield Gardens, Inc.* v. *County of Solano,* 45 Cal.2d 575 [290 P.2d 562]; *Victor Valley Housing Corp.* v. *County of San Bernardino,* 45 Cal.2d 580 [290 P.2d 565]; *El Toro Dev. Co.* v. *County of Orange,* 45 Cal.2d 586 [290 P.2d 569].

Affairs of the fee value of the land. The lessees were further obliged to pay the expenses of operation and maintenance, and the insurance and taxes; and the use of the property and the nature of the construction of buildings on it were made subject to prior approval by the Indian owner.

The assessor estimated the possessory values of the land and of the buildings separately. With respect to the land, he first determined its fee value in accordance with his usual methods of valuing fees. He then in effect attributed a net income of 6 per cent of fee value to the property,[2] and by employing applicable capitalization tables he estimated the present value of the right of the fee owner to recover possession after 50 years and deducted such value from the fee value, thus arriving at the "true value" of the possessory interest. From this "true value" he deducted 10 per cent for risk and restrictions on use contained in the lease. The result was the "full cash value" of the possessory interest in the land.[3] (See Rev. & Tax. Code, § 401.)

With respect to the improvements, the assessor decided that their useful lives were shorter than the terms of the leases. He therefore valued the improvements as if they were owned in fee by the lessees, employing his usual method of estimating the current cost of constructing such improvements and then deducting an amount for depreciation since the actual date of construction. The result was the "full cash value" of the buildings.[3]

Thus in valuing the possessory interests of defendants for the involved tax year (1961-1962) the assessor did not undertake to capitalize defendants' anticipated actual net income, which was the method this court instructed be followed in *De Luz Homes, Inc.* v. *County of San Diego, supra,* 45 Cal.2d 546, 574. He explained that in his opinion there was a lack of sufficient experience as to actual income and expenses, and that any appraisal based on capitalization thereof would not be reliable. The trial court, which heard these matters on the record of the proceedings before the county board of equalization, determined the method followed by the assessor and approved by the board to be proper, and further found that defendants failed to produce for the use of the assessor or at

[2] The assessor actually used an 8 per cent figure, which included 2 per cent for taxes; this amounted to attributing a 6 per cent net income.

[3] To this "full cash value" the prevailing assessment ratio of 25 per cent was then applied.

the hearings before the board of equalization actual income and expense figures which could be used for the purpose of a reliable capitalization of income method of appraisal. Judgments were entered for recovery of taxes computed upon the valuations reached pursuant to the method of the assessor, and these appeals followed.

As declared in *De Luz Homes, Inc.* v. *County of San Diego, supra,* 45 Cal.2d 546, 564 [16], the decision of the board of equalization "in regard to specific valuations and the methods of valuation employed are equivalent to the findings and judgment of a trial court and reviewable only for arbitrariness, abuse of discretion, or failure to follow the standards prescribed by the Legislature."

There is no merit in defendants' contention that the assessor erred in not using the "capitalization of actual income" method which was held applicable to the facts in *De Luz, supra.* Under this method actual prospective net income for the term of the lease is estimated. The present, or "capitalized," value of such prospective net income is deemed the "full cash value" of the possessory interest. (45 Cal.2d at pp. 564-566.) In *De Luz* it was held that because of the nonenterprise nature of the project (housing) there involved and the fact that rents and occupancy were fairly certain, estimated *actual* income should have been capitalized; however, this court further declared (p. 572) that "we do not condemn all estimates of value based on capitalization of an *imputed* income. In valuing property wherein actual income is derived in large part from enterprise activity and cannot be ascribed entirely to the use of the property, an *imputed* income analysis may be both useful and appropriate. . . . [P. 565.] In instances in which future income cannot be estimated with reasonable accuracy or is not ascribable entirely to the property, prospective net monetary income is *imputed* in an amount equal to a minimum reasonable return on estimated market value." (Italics added.)

Here it appears that the actual income will be derived largely from enterprise activity (development, subleasing, percentage renting for commercial or professional usage). Further, the assessor found a method which approximated the "imputed income" method[4] to be both useful and ap-

---

[4]The "imputed income" method described in *De Luz* involves estimating market value of the fee, computing a reasonable return on this market value, and then finding the present value of that return received

propriate in view of his determination that there was a lack of actual income and expense history, and no error is shown. Defendants' suggestion in their brief that the income history in *De Luz* was "slight compared to that available here," cannot be taken seriously. The trial court, as stated, found that defendants had failed to produce any such history for the use of the assessor or the board of equalization, and defendants neither challenge such finding nor point to any showing to the contrary in the record. (See *Wild Goose Country Club* v. *County of Butte* (1922) 60 Cal.App. 339, 342 [212 P. 711]; *Merchants Trust Co.* v. *Hopkins* (1930) 103 Cal.App. 473, 477-478 [2] [284 P. 1072].)

As noted (fn. 2, *ante*), the assessor imputed a net income of 6 per cent to the land, and capitalized the income at that rate. The record supports this figure. A real estate appraiser testified in effect that risk capital could be attracted to investment in real property in Palm Springs for "about six percent net after taxes, depreciation and everything." In *De Luz* it is pointed out that (p. 566 [20, 21] of 45 Cal.2d), "The net earnings to be capitalized . . . are . . . those that would be anticipated by a prospective purchaser." Further, inasmuch as the 6 per cent rate employed by the assessor was a *net* imputed income, after deduction of probable expenses from anticipated gross receipts, defendants' suggestion that proper allowance was not made for their expenses in connection with the property is without foundation.

In most of these cases, as stated, the term of the lease was for 25 years, with an option to the lessee to extend it for another 25 years; in such instances the assessor considered the lease term to be the full 50 years. Again no error is shown. The assessor was faced with the task of valuing an

---

over the term of the lease. Here, in assessing the possessory interest in the land, the assessor used this theory but applied it from the other end. After finding a reasonable return on market value, he used it to determine the present value of the reversion (i.e., the amount which, if invested now at a reasonable rate of return, would build up in 50 years to today's market value), then deducted this from the present market value. Conceptually, the two methods are the same, and they result in the same present dollar valuation of the possessory interest held by the taxpayers. (Cf. *Texas Co.* v. *County of Los Angeles* (1959) 52 Cal.2d 55, 60 [338 P.2d 440].)

The buildings were valued according to the same theory, in effect, no deduction being made for the reversionary interest because the useful lives of the buildings would be exhausted before the reversion matured.

asset held by the lessee, who had the right to retain the property for 50 years. In *De Luz, supra,* this court held that the assessor could consider a lease term to be for 75 years and capitalize for the unexpired period thereof, even though the landlord had the right to terminate at the end of 50 years, as the parties "clearly contemplate[d]" that the lease would exist for the full period. (P. 574 of 45 Cal.2d.)

■ Defendants appear to suggest that the 10 per cent deduction made by the assessor for risk and restrictions on use contained in the lease is arbitrary and without support in the record. However, defendants have made no showing that an allowance in any specific amount or percentage would be in order for this purpose, and are obviously not prejudiced by the 10 per cent figure arrived at by the assessor.

■ The assessor was correct in separately assessing the possessory rights in the buildings and in the land. As declared in *Forster Shipbldg. Co.* v. *County of Los Angeles* (1960) 54 Cal.2d 450, 455 [6 Cal.Rptr. 24, 353 P.2d 736], possessory interests in land are legislatively defined as "real estate" or "real property" for purposes of taxation. Further, both the California Constitution (art. XIII, § 2) and the Revenue and Taxation Code (§ 607) provide that land and the improvements thereon shall be separately assessed.

■ Defendants contend that the assessor erred, however, in valuing the improvements by the "reproduction cost less depreciation" method, because this method was disapproved in *Victor Valley Housing Corp.* v. *County of San Bernardino, supra* (1955) 45 Cal.2d 580, and in *El Toro Dev. Co.* v. *County of Orange, supra* (1955) 45 Cal.2d 586, two of three companion cases to *De Luz.* But *Victor Valley* and *El Toro* disapproved of this method only on the facts of those cases. In each case it appeared that the buildings were not expected to reach the end of their economic life before the lease terminated. (Pp. 584, 588, of 45 Cal.2d.) By contrast, in the cases now before us the assessor determined that the useful lives of the buildings were shorter than the unexpired periods of the leases, and defendants neither claimed nor showed a longer life expectancy for the buildings. Under such circumstances the method employed by the assessor is both permissible and realistic, and no error has been established. (See fn. 4, *ante.*)

The judgments appealed from are affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and Mosk, J., concurred.