[L. A. No. 27798. In Bank. Apr. 15, 1966.]

EL TEJON CATTLE COMPANY, Plaintiff and Appellant, v. COUNTY OF SAN DIEGO, Defendant and Respondent.

Glenn & Wright, Conron, Heard, James & Hamilton and Calvin H. Conron, Jr., for Plaintiff and Appellant.

Bertram McLees, Jr., County Counsel, Robert G. Berrey, Assistant County Counsel, and Lawrence Kapiloff, Deputy County Counsel, for Defendant and Respondent.

BURKE, J.—Plaintiff appeals from an adverse judgment in its action to recover property taxes paid under protest for the tax years 1961-62 and 1962-63 on its possessory interest in some 40,000 acres of tax-exempt land in San Diego County. As will appear, we have concluded that the trial court correctly

determined that the method employed by the county assessor and approved by the county board of equalization was proper and permissible under the circumstances, and, further, that no attempted taxation of exempt property was shown. The judgment will therefore be affirmed.

Fee title to the involved land is held by Vista Irrigation District, a public agency, and is tax-exempt. In September 1960, following competitive bidding, plaintiff was awarded a five-year lease thereof for grazing purposes for a total of $240,000, payable $4,000 per month ($48,000 per year), with options to renew the lease for two additional five-year terms.

The lease imposes various restrictions on plaintiff, including limiting plaintiff's use to the ''grazing by cattle of native or cultivated forage crops, including all annual or perennial plants or shrubs, and for the supplemental or finished feeding of cattle.'' The fee owner (district) reserved the right to export water from the land, and other tenants had been granted the hunting and other recreational concessions.

In assessing plaintiff's possessory interest the assessor first ascertained that the highest and best use of the 40,000-acre ranch was for the grazing of cattle, and determined its fee value to be $881,980. Inasmuch as plaintiff's grazing lease had been awarded after competitive bidding the assessor was of the opinion that a capitalization of the rent called for by the lease would give the best indication of the value of the portion of the fee allocated to grazing purposes, as distinguished from the rights in the property which the lessor had retained or had leased to others. In capitalizing the rent, the assessor employed an 8 percent rate of return, which represented a 4 percent pure interest rate on money invested, plus 2 percent for management and various other costs and 2 percent for taxes; this 8 percent rate was uniformly applied in valuing all grazing leaseholds in the county for the years in question.

Capitalizing the $48,000 annual rent at the 8 percent rate resulted in a figure of $600,000, which the assessor took to be the approximate market value of the fee with its use restricted in the manner that plaintiff's lease restricts plaintiff's use; this $600,000 was then reduced to $151,200 by application of the prevailing assessment ratio of 25.2 percent. The $151,200 equals some 17 percent of the full fee value of $881,980; however, ''as a further consideration of the lessee rights,'' the assessor in this case took the assessed value of the restricted

fee to be only 16 percent of the full fee, thus fixing $141,117 as assessed value of the restricted fee.

Considering the lease term to be the full 15 years for which plaintiff could retain the property under its options, the assessor then imputed an income of 8 percent to the assessed value of the restricted fee, and by employing applicable capitalization tables and the correct Inwood coefficient of .3152[1] he estimated the present value of the right of the fee owner to recover possession after 15 years to be $44,480; he then deducted such value from the fee value and arrived at $96,637 as the "true value" of plaintiff's possessory interest during the first year of its lease. Finally, he applied a standard "safety factor" of 15 percent applicable to possessory interests, thus reducing to $82,141 the amount for which plaintiff's 15-year possessory interest in the land was assessed for the tax year 1961-62. For the year 1962-63 the same method was employed, except that the capitalization rate applicable to the remaining 14 years of the lease was applied; the resulting assessed value of the possessory interest in the land was $79,110 (rounded off to the nearest $10).

Both the county board of equalization and the trial court determined the method followed by the assessor to be proper, and that there was no merit in plaintiff's argument that at least a portion of the assessment against it was on tax-exempt property.

In our view the capitalization of income method here employed by the assessor is permissible and realistic upon the facts shown. In ascertaining the portion of the entire fee which should be allocated to the grazing rights, the $48,000 actual annual rent received by the fee owner for such rights was capitalized, with, as noted, allowances for expenses and taxes and a resulting 4 percent per annum net return to the fee owner. The 4 percent figure is supported by testimony of an appraiser which appears in the record, and the capitalization of income follows the method appropriate under the circumstances. (See *De Luz Homes, Inc.* v. *County of San Diego* (1955) 45 Cal.2d 546 [290 P.2d 544].)

When faced with apportioning the resulting $600,000 as between (1) the present value of plaintiff's right to use the land for grazing purposes for a period of 15 years, and (2) the present value of the fee owner's right to recover possession upon termination of that period, no figures were available to

---

[1]See Babcock, Valuation of Real Estate (1932), p. 540.

the assessor with respect to anticipated actual income which would accrue to plaintiff during the lease; further, the actual income would be derived largely from the enterprise activity of plaintiff's cattle operations. Hence, as in *County of Riverside v. Palm-Ramon Dev. Co.* (1965) 63 Cal.2d 534, 538-539 [47 Cal.Rptr. 377, 407 P.2d 289], recently decided by this court, the assessor found the imputed income method to be useful and appropriate, and no error is shown. The 8 percent gross return (4 percent net) employed for this purpose corresponds to the 8 percent at which the fee owner's actual return (in rent) was capitalized, and appears fair to both plaintiff and defendant county. Plaintiff's contention that the assessor should have considered the lease to be for 5 years only, rather than for the full 15 years which included the option periods, was determined to the contrary in *County of Riverside v. Palm-Ramon Development Co., supra,* (p. 540 [4] of 63 Cal.2d) and in *De Luz Homes, Inc. v. County of San Diego, supra* (p. 574 of 45 Cal.2d).

 Plaintiff argues that at least a substantial portion of the value of a grazing lease is in the forage, or the growing grass crop, and that inasmuch as growing crops are exempt from taxation (Cal. Const., art. XIII, § 1; Rev. & Tax. Code, § 202), the tax upon plaintiff's possessory interest is in part upon exempt property. The contention is without merit. It is undisputed that the grass, termed "natural grasses," does not require annual or seasonal planting; it may therefore be appropriately likened to alfalfa, a perennial plant considered in *Miller v. County of Kern* (1902) 137 Cal. 516, 524-526 [70 P. 549], and held not to fall within the constitutional exemption. (See also *Cottle v. Spitzer* (1884) 65 Cal. 456 [4 P. 435, 52 Am.Rep. 305]; *Jackson & Perkins Co. v. Stanislaus County Board of Supervisors* (1959) 168 Cal.App.2d 559 [335 P.2d 976]; *Stribling's Nurseries, Inc. v. County of Merced* (1965) 232 Cal.App.2d 759 [43 Cal.Rptr. 211].) Plaintiff asserts that the "lease contemplates, during years of sufficient water, the tilling of some 700 acres for the purpose of raising hay," which should be excluded from taxation. Suffice it to say that plaintiff made no showing that any "growing crops" on the property had been taxed. What was taxed was the possessory interest which plaintiff has in the real property—the right to go upon and occupy it for certain purposes as outlined in its lease. These purposes, while restricted, are not limited to the harvesting of a single crop; they include the grazing of cattle

which is a continuing operation over a period of months with the grasses continuing to grow and supply feed during the growing season. During these periods the land must physically support the cattle, provide areas for their watering and other needs. Included in the permitted purposes is the right to supply the cattle while on the leased land with supplemental or finished feeding.

Inasmuch as we have concluded that the assessment for the two tax years here in question was proper, it is unnecessary to discuss plaintiff's failure to pursue statutory protest remedies with respect to the first of such years.

The judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Peek, J., and Mosk, J., concurred.