[L. A. No. 29481.  In Bank.  Oct. 30, 1967.]

CALIFORNIA PORTLAND CEMENT COMPANY et al., Plaintiffs and Appellants, v. STATE BOARD OF EQUALIZATION, Defendant and Respondent.

Wallace K. Downey for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, Mario A. Roberti and Neal J. Gobar, Deputy Attorneys General, for Defendant and Respondent.

Harold W. Kennedy, County Counsel, and A. R. Early, Assistant County Counsel, as Amici Curiae on behalf of Defendant and Respondent.

BURKE, J.—The trial court denied mandamus to quash a subpoena duces tecum by which the State Board of Equalization sought the production of certain business records of plaintiff corporation, which appeals.[1] As will appear, we have concluded that the court was correct in its determination that no ground for relief has been shown, and that the judgment should be affirmed.

The Board, pursuant to its duty to equalize the valuation of taxable property in the several counties of the state (Cal. Const., art. XIII, § 9), is directed to make a periodic survey "in each county to determine the total full cash value of all locally assessable tangible property," and to consider data compiled by its appraisers to ascertain accurately the value of various properties selected at random as samples. (Rev. & Tax. Code, § 1815 et seq.)[2] Among the properties selected for test purposes in 1965 was a parcel of desert land consisting of a limestone quarry and an adjacent cement mill in Kern County near Mojave (Mojave Plant), including improvements thereon and personal property used and processed therein, all owned and operated by plaintiff California Portland Cement Company, a California corporation, engaged in the manufacture and sale of portland cement and limestone products in southern California, Nevada and Arizona. Plaintiff also owns and operates a cement mill adjacent to a quarry in San Bernardino County near Colton, and in Pima County, Arizona, near Tucson. Limestone and other materials are mined and crushed at each quarry, and in the adjacent mill the crushed rock, mixed with other raw materials, is manufactured into cement by calcining and grinding processes.

For valuation purposes the Board's appraiser obtained cer-

---

[1] Also appearing as a plaintiff and appellant is the corporate officer upon whom the subpoena was served.

[2] Unless otherwise stated, all section references are to the Revenue and Taxation Code.

tain data and information from plaintiff's records, but plaintiff was unwilling to make available certain other information requested by the appraiser, whereupon the subpoena here involved was served, requiring the production of all business records with respect to the Mojave Plant.[3]

Plaintiff furnished the information described in items 4 and 5 of the subpoena, but refused to produce that listed in items 1, 2 and 3.[4] Threatened with contempt proceedings, plaintiff sought mandamus. At the hearing before the trial court the Board contended the withheld information was relevant to its determination of the "full cash value" of the property, while plaintiff declared that it was not attempting to avoid taxation or fair assessment but objected to revealing information which it considered to be confidential and irrelevant to fair assessment of its property. No evidence was introduced. The court denied relief and this appeal followed.

Plaintiff does not question the Board's right to subpoena information in its equalization survey (see *Redding Pine Mills, Inc.* v. *State Board of Equalization* (1958) 157 Cal.

---

[3]Viz.:
"All ledgers, journals, financial statements (including profit and loss statements, balance sheets and operating statements) and all other records of said California Portland Cement Company pertaining to its limestone mine and quarry known as the Mojave plant and quarry, located approximately nine miles west of Mojave, Kern County, California, including the property described as Kern County Assessor's Parcel No. 237-090-06-00, showing and supporting the following:

"1. Sales volumes and income at said Mojave plant and quarry for the years 1962, 1963 and 1964.
"2. Costs at said Mojave plant and quarry for the years 1962, 1963 and 1964, broken down as follows:
    "a. Quarrying costs, excluding depreciation, depletion, and taxes
    "b. Crushing, milling, and burning costs, excluding depreciation, depletion, and taxes
    "c. Quarry overhead
    "d. Plant overhead
    "e. Property taxes
    "f. General Administrative expenses
    "g. Sales expense
    "h. Federal and State income taxes
"3. Production volume for said Mojave plant and quarry for the years 1962, 1963 and 1964.
"4. Tons mined at said plant and quarry by years since commencement of operations by said California Portland Cement Company.
"5. Inventory costs for manufactured products and goods in process as of February 23, 1965, contained in said company's Form 504 R964, 'California Portland Cement Company Inventories, February 28, 1965, April 30, 1964, Inventories—Mojave', also referred to as the company's 'Schedule 2M Inventories.'"
[4]Except item 2e, property taxes, which data plaintiff produced.

App.2d 40 [320 P.2d 25]), if the information sought is "reasonably relevant" to an accurate valuation of the property for tax purposes. (See *Brovelli* v. *Superior Court* (1961) 56 Cal. 2d 524, 529 [9] [15 Cal.Rptr. 630, 364 P.2d 462].)

However, plaintiff contends that the Board is seeking irrelevant information consisting of plaintiff's "sales of products manufactured in said Mojave Plant for 1962, 1963 and 1964, its cost of operation of said plant, and its profits from the products of said plant for each of said years." Plaintiff states the issue to be whether the Board may require the production of information regarding the profitability of a manufacturing *business* in the hands of a particular owner as evidence from which to determine the "full cash value" of a part of the *property* used by the owner in the conduct of that business.

[See fn. 5] The Board in its answer to the petition for mandate alleged, *inter alia,* and the trial court found:[5] There are three basic approaches used in appraisal of property, which are (1) comparable sales, (2) capitalized earning ability, and (3) replacement costs less depreciation. It is desirable to use these methods in combination wherever possible, to obtain more accurate results, rather than relying on only one of the methods. The Board does not have sufficient data on comparable sales of cement plants to use this approach in appraising plaintiff's property. The capitalized earning ability approach, which reflects the price that a purchaser of the property could pay and recover a reasonable return on his investment, is the primary appraisal method used by the Board in valuing petroleum and mining properties, including limestone quarries and cement plants. Earnings data for the past several years is useful and used to assist an appraiser in projecting and determining future net income and earning ability, and is needed and used to determine a trend and help avoid error which could be caused from examining a short, possibly abnormal, period. Production volume is useful and used to determine the portion of capacity at which the plant was operating and relate earnings, income and costs to units of production. The costs breakdowns requested are useful and used with production volume to determine unit costs; to check for unusual or abnormal costs which would not be typical or

[5]Plaintiff has controverted none of the factual allegations of the answer, which the trial court was therefore correct in accepting as true. (See Code Civ. Proc., § 1091; *Hunt* v. *Mayor & Council of Riverside* (1948) 31 Cal.2d 619, 623 [2] [191 P.2d 426].)

normal; and to determine costs attributable to mining, to determine a portion of net income allocable to the mining operation to be used in determining a value for the quarry. The sales volumes and income figures are useful and used in conjunction with cost figures to determine net return and earnings to the property owner. The information sought in the subpoena herein has been made available and used in all appraisals by the Board of similar properties for the past three years or longer, in determining past earnings. Such past earnings have uniformly been considered in determining expected future net income in all appraisals of similar properties for the past three years, except where there were no past operations. Such information is needed here to help insure uniformity in approach to the appraisal of plaintiff's property. The information, when compared with similar information obtained in other similar appraisals, will help the appraiser to determine more accurately what receipts, expenses and net income a purchaser of the property being appraised could reasonably expect to earn from future operations. Such anticipated income is the basis for an estimate of property value under the capitalized earning ability approach.

The Board alleged and the court found, further, that the information obtained by the Board is confidentially retained by it, and will not be disclosed to plaintiff's business competitors.

The "full cash value" which the statute directs the Board to determine (§ 1815, see also § 401) means "the amount at which property would be taken in payment of a just debt from a solvent debtor" (§ 110), or as stated in *De Luz Homes, Inc.* v. *County of San Diego* (1955) 45 Cal.2d 546, 562 [6] [290 P.2d 544], "the price that property would bring to its owner if it were offered for sale on an open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other."

When, as in the present case, it appears that insufficient market data is available to ascertain the "actual market" of the particular type of property, other factors such as replacement costs and income analyses may be employed in determining valuation. (*Kaiser Co.* v. *Reid* (1947) 30 Cal.2d 610, 623 [184 P.2d 879]; see also *De Luz Homes, Inc., supra,* pp. 563-564 [15] of 45 Cal.2d; 51 Am.Jur., Taxation, p. 650, § 698; Cooley. Taxation (4th ed.) p. 2308, § 1145.) Thus, the capitalization of income method is a generally accepted method of valuing property from which income is or may be

derived (*De Luz Homes, Inc.* v. *County of San Diego, supra,* at p. 564 [17]; see also *El Tejon Cattle Co.* v. *County of San Diego* (1966) 64 Cal.2d 428, 430 [50 Cal.Rptr. 546, 413 P.2d 146]) and has been approved by the courts for the valuing of producing mineral properties. (See *Birch* v. *County of Orange* (1922) 59 Cal.App. 133, 137, 139 [210 P. 57]; *South Utah Mines* v. *Beaver County* (1923) 262 U.S. 325, 330-332 [67 L.Ed. 1004, 1007-1008, 43 S.Ct. 577]; *Cal-Bay Corp.* v. *United States* (9th Cir. 1948) 169 F.2d 15, 18 [4], cert. den. 335 U.S. 859 [93 L.Ed. 406, 69 S.Ct. 134].) ■ Further, it is settled that earnings of property may be taken into account in determining valuations, whether or not the capitalization of income method, as such, is employed. (See *Roehm* v. *County of Orange* (1948) 32 Cal.2d 280, 285 - 286 [196 P.2d 550], and authorities there cited.)

■ However, when earnings are taken into account or the capitalization of income method is employed, the profitableness of property to its present owner does not provide a standard by which to arrive at its "full cash value"; rather, the net earnings to be considered or capitalized are those that would be anticipated by a prospective purchaser. (*County of Riverside* v. *Palm-Ramon Dev. Co.* (1965) 63 Cal.2d 534, 539 [3] [47 Cal.Rptr. 377, 407 P.2d 289], quoting from *De Luz, supra,* p. 566 [20, 21] of 45 Cal.2d; *Victor Valley etc. Corp.* v. *County of San Bernardino* (1955) 45 Cal.2d 580, 585 [4] [290 P.2d 565]; *Texas Co.* v. *County of Los Angeles* (1959) 52 Cal.2d 55, 61-62 [3] [338 P.2d 440]; *County of Tuolumne* v. *State Board of Equalization* (1962) 206 Cal.App.2d 352, 368-369 [21] [24 Cal.Rptr. 113]; 51 Am.Jur., Taxation, p. 650, § 698.) ■ Nor may income derived in large part from enterprise activity be ascribed to the property being appraised; instead, it is the earnings from the property itself or from the beneficial use thereof which are to be considered. (See *De Luz Homes, Inc., supra,* p. 572 of 45 Cal.2d; *Palm-Ramon, supra,* pp. 538-539 [2] of 63 Cal.2d; *Michael Todd Co.* v. *County of Los Angeles* (1962) 57 Cal.2d 684, 696 [21 Cal.Rptr. 604, 371 P.2d 340]; *Kaiser Co.* v. *Reid, supra,* 30 Cal.2d 610, 625.) When no sound or practicable basis appears for apportionment of income as between enterprise activity and the property itself, then a method may be employed which imputes an appropriate income to the property. (See *El Tejon Cattle Co.* v. *County of San Diego, supra,* 64 Cal.2d 428, 430 - 431 [1]; *De Luz, supra,* p. 565 [18] and p. 572 of 45 Cal.2d; *Palm-Ramon, supra,* p. 539 [3] of 63 Cal.2d.)

In the present case respondent Board is attempting to value not only the land on which plaintiff's cement mill is located, but rather to value as a unit plaintiff's entire Mojave Plant, consisting of a single parcel of land upon which a quarry and mill are located, together with the improvements and the personal property located there. ██ To enable the Board to make income studies which will be as accurate as reasonably possible, and to determine whether the actual net earnings of the entire property are subject to ascertainment or whether an imputed income analysis will be useful and appropriate, the information sought by the Board but refused by plaintiff is clearly relevant.[6] Plaintiff's plea that it is engaged in a manufacturing *business*, the profits of which are not relevant to ascertainment of the "full cash value" of a *part* of the property used therein (apparently plaintiff refers to the cement mill only), presents a play on words which lacks persuasion. The taxpayers whose property has been valued by the capitalization of income method, as in *De Luz, Palm-Ramon, El Tejon*, etc., may likewise be viewed as engaging in the "business" of using, managing or developing the property or its products, hopefully for a profit. Plaintiff's quarry and cement mill, together comprising the Mojave Plant, appear to be operated as a unit, with each contributing to the economy and profitability of the other. ██ If, as plaintiff asserts in its brief, its ultimate profits arise largely from enterprise, that fact must be given full weight by the Board in order that use of the capitalization of income method of appraisal not result in a tax on income rather than on property. ██ Here, however, there is no showing that the Board proposes or intends to make improper use of the information it seeks. (See *County of Riverside* v. *Palm-Ramon Dev. Co., supra,* 63 Cal. 2d 534, 539 [2]; *Kaiser Co.* v. *Reid, supra,* 30 Cal.2d 610, 626 [12].) Should any abuses of the income figures later arise, they can be controlled by the courts.

The judgment denying the writ is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

[6] As noted above (*ante,* fn. 3) the Board is seeking information for the three years preceding the 1965 test year. This is appropriate. "The incomes which have been produced by the property during past periods of time are not the basis of valuation but do serve as important evidence upon which to predict future incomes. . . ." (Babcock, Valuation of Real Estate, ch. 12, p. 132.)