[Civ. No. 39389. First Dist., Div. Four. Jan. 17, 1977.]

GROVER W. LUCAS, Plaintiff and Appellant, v.
COUNTY OF MONTEREY, Defendant and Respondent.

948

## Counsel

Jan Alton Walker, Frank H. James, Frank J. Noll and Kenneth C. Husby for Plaintiff and Appellant.

William H. Stoffers, County Counsel, and Henry I. Jorgensen, Deputy County Counsel, for Defendant and Respondent.

## Opinion

**CHRISTIAN, J.**—Grover W. Lucas appeals from a judgment which denied recovery of taxes paid under protest pursuant to the provisions of section 5136 of the Revenue and Taxation Code.

The following is a summary of the trial court's findings:

A. Lucas (hereinafter appellant) was taxed $10.64 by the County of Monterey for a possessory interest in berth B-20 in the Moss Landing Harbor District for the fiscal year 1972-1973. Appellant paid the taxes plus a penalty of $.63 for a total of $11.27 under protest.

B. Appellant has been assigned to berth B-20 since May 11, 1971, and has paid his possessory interest tax and berthing fees through May 12, 1975.

C. The harbor district's regulations include the following:

"[1] Assignments for or to wharf areas, or any other property, shall not be transferred or sublet without the written consent of the Harbor Board. Any violation of this rule shall subject the assignment to immediate cancellation at the discretion of the Harbor Board.

"[2] While a boat is absent from the Harbor so that its assigned berth is vacant, during the term of such vacancy the district shall have the right, for its own account and not for the account of the person to whom said berth is assigned, to re-rent said assigned berth, on a temporary basis with the understanding that boat must be moved when assigned tenant returns.

"[3] Permits may be revoked without notice at any time by order of the Commission.

"[4] Permits for moorings in the harbor are issued to the individual and not to the boat, and are not transferable except as herein provided. The obligation for moorage shall be deemed to continue against the individual until such time as that individual notifies the District in writing that he is vacating the berth to which he has been assigned.

"[5] A permit may be changed only if the owner sells his boat and desires a substitute permit for another boat in his name. Such change will be made upon payment of the difference in charges."

D. Appellant's assignment to a berth is considered "preferential"; such an assignment is not revoked except when it is determined that the berth is not being actively and reasonably utilized.

E. During the summer months from 1971 to 1974, numerous other boat owners have, with the permission of the Moss Landing Harbor District, rented and used berth B-20. No accurate record exists of that usage.

F. During the winters of 1971-1972 and 1972-1973, appellant was assigned to other berths as his berth was occupied by other vessels; the harbor board made those assignments pursuant to its rules and regulations.

G. The berth itself is a specific area outlined by a floating dock which is permanently affixed to the bottom of the harbor with pilings. The right to the berth gives the berth-holder the right to attach his mooring lines to fixtures on the dock, to preempt space on the dock adjacent to his vessel for temporary storage of repair equipment and supplies, the right to use of fresh water piped to the docks and to electric power. The entire dock area is kept locked; keys are issued to berth-holders, permitting entry and common use of the dock.

The superior court concluded that appellant had an exclusive right to use berth B-20 and therefore owned a possessory interest which was taxable as an improvement on tax-exempt land.

Appellant claims that his assigned berth is exempt as a nonpossessory interest as provided in Revenue and Taxation Code section 107.4:

"For purposes of Section 107, 'possessory' interest shall not include the possession of, claim to, or right to the possession of any berth, wharf, dock, pier, or similar harbor facility owned by a city, city and county, county, or harbor or port district, if such possession, claim, or right is granted for nonexclusive use of such berth, wharf, dock, pier, or similar harbor facility. Any nonexclusive possession, claim, or right described in this section shall not be subject to property taxation. If the possession of, claim to, or right to the possession of, any such berth, wharf, dock, pier, or similar harbor facility is, in fact, exclusive, it shall be subject to property taxation, regardless of the manner in which such possession, claim, or right is created. As used in this section, a 'nonexclusive possession, claim, or right' means a right to the use of a specific berth, wharf, dock, pier, or similar harbor facility, when such specific facility is also used intermittently by others, even though such possession, claim, or right to use such facility is paramount to any use by others. As used in this section, a 'nonexclusive possession, claim, or right' includes a right to the use of a specific berth, wharf, dock, pier, or similar harbor facility, when the owner reserves the right to assign to others the right to use such facility."

The trial court found that appellant's berth did not meet the definition of section 107.4 in that appellant had "exclusive" possession of the berth. Respondent concedes that under section 107.4 appellant's berth is purportedly exempted from taxation, but argues that the statute is unconstitutional. Section 107.4 excludes from taxation "the right to the possession of any berth, . . . or similar harbor facility owned by a . . . county, or harbor or port district, if such possession, claim, or right is granted for nonexclusive use . . . ." The statute proceeds to define "nonexclusive" as "a right to the use of a specific berth, . . . when such specific facility is also used intermittently by others, even though such possession, claim, or right to use such facility is paramount to any use by others." ▆ The trial court's determination that appellant was in exclusive possession of the berth and that his interest was therefore taxable cannot be reconciled with the above-quoted language of section 107.4.

Respondent nevertheless contends that the judgment should be affirmed, arguing that the statute relied on by appellant is unconstitutional. The trial court did not rule on the basis of the constitutional analysis proposed by respondent, but respondent may raise the issue in resisting the appeal, to show that the trial court's error in applying the

statute was not prejudicial. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, p. 4207, and cases cited there; Code Civ. Proc., § 906.)

It is also unnecessary to reverse the trial court's decision with directions to consider the constitutional issue as that issue, being one of law, can appropriately be dealt with by this court in the present appeal.

Appellant contends that section 107.4 is a proper exercise of legislative power to give effect to the constitutional provisions concerning property taxation. The interpretive effect, appellant maintains, is consistent with the judicial definition of "possessory interests" as exclusive use. (*Kaiser Co.* v. *Reid* (1947) 30 Cal.2d 610 [184 P.2d 879].) Appellant argues that section 107.4 defines "exclusive use" giving a clearer meaning to "possessory interests."

The Constitution, article XIII, section 1, mandates the taxation of all property according to its value:

"Sec. 1. Unless otherwise provided by this Constitution or the laws of the United States:

"(a) All property is taxable and shall be assessed at the same percentage of fair market value. When a value standard other than fair market value is prescribed by this Constitution or by statute authorized by this Constitution, the same percentage shall be applied to determine the assessed value. The value to which the percentage is applied, whether it be the fair market value or not, shall be known for property tax purposes as the full value.

"(b) All property so assessed shall be taxed in proportion to its full value."*

Similarly, Revenue and Taxation Code section 201 provides that all "property" is subject to taxation: "All property in this State, not exempt under the laws of the United States or of this State, is subject to taxation under this code." ■ It has long been held that a valuable possession of land is deemed property and is taxable. (See *People* v. *Shearer* (1866) 30 Cal. 645, 657; *Board of Supervisors* v. *Archer* (1971) 18 Cal.App.3d 717 [96 Cal.Rptr. 379]; *Mattson* v. *County of Contra Costa* (1968) 258 Cal.App.2d 205 [65 Cal.Rptr. 646].)

*California Constitution, article XIII, section 1, as adopted November 5, 1974. Former article XIII, section 1, was substantively consistent in the parts pertinent to this appeal.

At the time section 107.4 was enacted, "possessory interests" had a long judicial history. The courts have interpreted various fact situations as constituting possessory interests. In *Mattson v. County of Contra Costa, supra,* 258 Cal.App.2d 205, a snack bar's dining area at a municipal golf course, open to golfers not a part of the snack bar's clientele, was deemed to be a taxable possession of property. In *Board of Supervisors v. Archer, supra,* 18 Cal.App.3d 717, grazing land leased by the federal government was deemed a "possessory interest" even though the same land could be leased to various ranchers simultaneously. In *El Tejon Cattle Co. v. County of San Diego* (1966) 64 Cal.2d 428 [50 Cal.Rptr. 546, 413 P.2d 146], the court determined that a "possessory interest" in grazing land existed even where there was no "exclusive" possession of the land. "It does seem clear that the California Supreme Court would not insist today that an interest must be such as to exclude all others from the subject property in order to be classed as a possessory interest." (*Georgia Pacific Corp. v. County of Mendocino* (N.D.Cal. 1972) 340 F.Supp. 1061, 1067.) In *Sea-Land Service, Inc. v. County of Alameda* (1974) 36 Cal.App.3d 837 [112 Cal.Rptr. 113], the court determined that a preferential assignment to a berth in a tax-exempt harbor was a "possessory interest" taxable as real property. That court reaffirmed the proposition that " ' "Possessory interests" in "land or improvements" are taxable under *section 107 of the Revenue and Taxation Code* and in pursuance of the constitutional mandate that "all property . . . shall be taxed." (Const., art. XIII, § 1.)' " (*Sea-Land Service, Inc. v. County of Alameda, supra,* 36 Cal.App.3d at p. 841, quoting *Kaiser Co. v. Reid, supra,* 30 Cal.2d 610, 618.) The court in *Board of Supervisors v. Archer, supra,* 18 Cal.App.3d 717, 726-727, further defined "possessory interests" (quoting Cal. Admin. Code, tit. 18, § 21, pp. 4.6.2 and 4.7) as: "an interest in real property 'which exists as a result of possession, exclusive use, or a right to possession or exclusive use of land . . . unaccompanied by the ownership of a fee simple or life estate in the property.' It may exist as the result of a grant, among others, 'of a leasehold estate, a profit a prendre, or any other legal or equitable interest of less than freehold . . . , provided the grant confers a right of possession or exclusive use which is independent, durable, and exclusive of rights held by others in the property.' 'Exclusive use' is not destroyed by '[c]oncurrent use when the extent of each party's use is limited by the other party's right to use the property at the same time, as, for example, when two or more parties each have the independent right to graze cattle on the same land.' "

Similarly, the *Sea-Land* court concluded: "Nor does the fact that the use permitted to Sea-Land is restricted solely to the loading and

unloading of cargo vessels and uses incidental thereto so severely limit Sea-Land's right to possession as to cause its right to be other than a possessory interest." (36 Cal.App.3d at p. 843.) Thus, judicial determination of possessory interests in general, and also as applied to berths, has been addressed. The cases have shown a consistent course of interpretation in defining "possessory interests."

Section 107.4 now purportedly excludes from the definition of "possessory interest" any "berth, wharf, dock, pier, or similar harbor facility, when such specific facility is also used intermittently by others, even though such possession, claim, or right to use such facility is paramount to any use by others. [¶] [This] includes a right to the use of a specific berth, wharf, dock, pier, or similar harbor facility, when the owner reserves the right to assign to others the right to use such facility." (Rev. & Tax. Code, § 107.4.)

■ The effect of this legislation is to reclassify berths, wharfs, etc., containing the noted characteristics, so that they are no longer considered property and are therefore exempt from taxation. Such an effect goes counter to the mandate of the Constitution, article XIII, section 1, that all property, not specifically excluded in the Constitution, shall be taxed. "Terms used in a constitutional amendment 'must be construed in the light of their meaning at the time of the adoption of the amendment, and cannot be extended by legislative definition, for such an extension would, in effect, be an amendment of the constitution, if accepted as authoritative." (*Forster Shipbldg. Co.* v. *County of L.A.* (1960) 54 Cal.2d 450, 456 [6 Cal.Rptr. 24, 353 P.2d 736].) Possessory interests in land have been legislatively defined as "real estate" or "real property" for purposes of taxation since 1872, and are still so defined today. (Rev. & Tax. Code, § 104.) The courts have long held that possessory interests in land are real property for the purposes of taxation. (*San Pedro etc. R.R. Co.* v. *Los Angeles* (1919) 180 Cal. 18, 20-21 [179 P. 393]; *Bakersfield etc. Co.* v. *Kern County* (1904) 144 Cal. 148, 152-153 [77 P. 892].)

Citing *Delaney* v. *Lowery* (1944) 25 Cal.2d 561 [154 P.2d 674], and *Kaiser* v. *Hopkins* (1936) 6 Cal.2d 537 [58 P.2d 1278], appellant claims that section 107.4 does not go so far as to give new meaning to the Constitution, but merely interprets the terms used. Appellant also claims

that section 107.4 is necessary in its attempt to clarify the ambiguity of the term "possessory interests."

*Kaiser* v. *Hopkins, supra,* 6 Cal.2d 537, does not support appellant's position. There the court decided the constitutionality of a statute interpreting Constitution article XIII, section 1¼, which exempted "property to the amount of [$1,000] of every resident . . . who has served in the Army, Navy, [etc.] in time of war, [and] has received an honorable discharge . . . ." (Const., art. XIII, § 1¼, repealed Nov. 5, 1974, replaced by art. XIII, § 3.) "The state legislature, in making provisions for carrying into effect the constitutional exemption referred to, in 1929 enacted a law by which the words 'in the time of war' were given legislative interpretation." (*Kaiser* v. *Hopkins, supra,* 6 Cal.2d at p. 540.) In concluding that the Legislature could properly establish a definition of those terms, the court quoted *San Francisco* v. *Industrial Acc. Com.* (1920) 183 Cal. 273 [191 P. 26]: " 'In such a situation, where a constitutional provision may well have either of two meanings, it is a fundamental rule of constitutional construction that, if the legislature has by statute adopted one, its action in this respect is . . . controlling. . . . [T]he courts should not and must not annul, as contrary to the constitution, a statute passed by the legislature, unless it can be said of the statute that it positively and certainly is opposed to the constitution.' " (*Kaiser* v. *Hopkins, supra,* 6 Cal.2d at p. 540.)

In the present case, the Legislature is not defining a term ("possessory interest") which is in new use, or which is ambiguous. There are not, as in *Kaiser,* two interpretations that might properly be applied to "possessory interests." The long legislative and judicial history of the term, cited here earlier, is clear. The effect of section 107.4 is "positively and certainly" opposed to the constitutional mandate (art. XIII, § 1) that "all property . . . shall be taxed."

*Delaney* v. *Lowery, supra,* 25 Cal.2d 561, is also to be distinguished. There the court considered the constitutionality of section 107 of the Revenue and Taxation Code. That enactment had the effect of transferring oil and gas leases from the unsecured to the secured tax rolls; those holdings were thus subjected to a different tax rate. Section 107 did not by defining terms effectively modify any constitutional provision as is the case here. There was no conflict with article XIII, section 1, mandating taxation, as the leaseholds were still to be taxed under the section; a

different formula for determining the taxes was merely provided. Here, contrary to article XIII, section 1, section 107.4 purports to exempt altogether the holders of the possessory interests with the specified characteristics.

Section 107.4 is also not necessary to clarify the term "possessory interests" as appellant claims. In the present case, appellant receives a benefit from his assigned berth; it is assigned to him alone. Although the permit may be revoked at any time by the harbor district, and although the berth may be reassigned when not in use, appellant maintains the right to secure his boat in the Moss Landing Harbor, if not in his particular berth, then at another. Appellant has access to storage facilities, the right to affix his mooring lines to fixtures on the dock, and the right to use fresh water piped to the docks and to electrical power. The assigned berth area is distinctly defined, and specifically assigned to him. Appellant possesses something that others have formed a waiting list to secure. The interest is a valuable possession. The possible instability of rights as between holders of the permits should be taken into account when fixing value, but it does not alter the fact that the permittee is presently enjoying the use of the berth. (*Board of Supervisors* v. *Archer, supra,* 18 Cal.App.3d 717, 725; also see *Mattson* v. *County of Contra Costa, supra,* 258 Cal.App.2d 205, 209.) Thus, section 107.4 does more than "clarify" a term; it gives "possessory interest" a completely new meaning with respect to port facilities. Appellant's berth would be considered a possessory interest but for section 107.4; that possessory interest is defined as property, and the Constitution requires that it be taxed.

■ Appellant maintains that even if section 107.4 is unconstitutional, he is holding a nonpossessory interest which under existing judicial determinations would be nontaxable. This contention is without merit. Appellant holds a permit to use berth B-20. Although *Kaiser Co.* v. *Reid, supra,* 30 Cal.2d 610, defines "possessory interest" as "exclusive use," "exclusive" has been given broad interpretation by the courts. The nontransferability, the possibility of the permit's revocation, limitations on the possessory use, or sharing of the use do not go to determining whether the interest is possessory, but merely to valuation. (*Sea-Land Service, Inc.* v. *County of Alameda, supra,* 36 Cal.App.3d 837; see *United States of America* v. *County of Fresno* (1975) 50 Cal.App.3d 633 [123 Cal.Rptr. 548], review granted 425 U.S. 970 [50 L.Ed.2d 281, 96 S.Ct.

2165].) Appellant has a valuable possessory interest; the characteristics he cites to support his position apply solely to the valuation determination.

The judgment denying appellant's claim for refund of taxes paid under protest is affirmed.

Caldecott, P. J., and Rattigan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 17, 1977.