The **AGUA CALIENTE BAND OF MISSION INDIANS**, by and through its Tribal Council, and Dora Joyce Prieto, Priscilla Gonzales, Gloria Gillette, Patrick Patencio and Lawrence Pierce, Allottees, Individually and in Class Action, on behalf of All Allottees of Allotted land on the Agua Caliente Band of Mission Indians Reservation, Plaintiffs,

v.

The **COUNTY OF RIVERSIDE**, a political subdivision of the State of California, Defendant.

Civ. No. 66–108–R.

United States District Court
C. D. California.

Oct. 17, 1969.

---

Raymond C. Simpson, Long Beach, Cal., for plaintiffs.

Ray T. Sullivan, Jr., County Counsel, Richard J. Lawrence, Deputy County Counsel, Steven A. Broiles, Deputy County Counsel, Riverside, Cal., for defendant.

Fort Mojave Indian Tribe, Needles, Cal., amicus curiae.

REAL, District Judge.

Plaintiff THE AGUA CALIENTE BAND OF MISSION INDIANS, by and through its Tribal Council (hereinafter referred to as AGUA CALIENTE) and plaintiffs DORA JOYCE PRIETO, PRISCILLA GONZALES, GLORIA GILLETTE, PATRICK PATENCIO and LAWRENCE PIERCE on their own behalf and as representative of all allottees of allotted land on the Agua Caliente Indian Reservation (hereinafter referred to as ALLOTTEES) bring this action against defendant COUNTY OF RIVERSIDE (hereinafter referred to as COUNTY) to permanently enjoin the assessment, levy and collection of possessory interest taxes and to recover damages.

Plaintiff AGUA CALIENTE is an American Indian Tribe recognized by the United States of America in the Mission Indian Relief Act of 1891 [1] with its amendments and Public Law 86–339.[2] By the Mission Relief Act, as amended,

---

1. 26 Stat. 712, January 12, 1891.

2. P.L. 86–339, Sept. 21, 1959, 73 Stat. 602–605, 25 U.S.C. §§ 951–960.

ALLOTTEES were individually allotted certain of the lands of the Agua Caliente Indian Reservation. All other lands of the reservation are unallotted tribal lands held for the benefit of the plaintiff AGUA CALIENTE.[3] Both allotted and unallotted tribal lands are held by the United States, in trust, for plaintiffs ALLOTTEES and AGUA CALIENTE.

Plaintiffs jointly, in the aggregate, own 26,646.28 acres of land laid out in a checkerboard pattern in the area of Palm Springs, California. Of this aggregate, 24,640.45 acres are allotted to 103 individual ALLOTTEES each having commercial, irrigable and desert lands appraised at $335,000.

Since the property is held in trust by the United States, the land cannot be sold or encumbered without the approval of the Bureau of Indian Affairs. Leases have been approved and cover 8 acres of allotted land. 59 Indians participate in long-term leases and 116 Indians participate in short-term leases. These leases generate practically all of the income available to plaintiffs' ALLOTTEES and AGUA CALIENTE.

Negotiations for the lease which precipitates this action began in 1957 and in 1958 a lease was executed for the land upon which is situated a major hotel, Palm Springs Spa. This lease is the sole lease upon tribal lands covering 8 acres. Negotiations for the lease were predicated upon an 8% return on capital to plaintiff. Both parties executed the lease under the impression that the land was tax exempt and that the property would be tax exempt as to the lessee.

Commencing with the tax year 1960–61, defendant COUNTY began assessing and collecting possessory interest taxes which have been steadily increasing since then.

Plaintiffs claim herein that imposition of a possessory interest taxes upon the

---

3. 25 U.S.C. § 953
"§ 953. Lands—Determination of value of unallotted and allotted lands; exclusion of deceased allottees' allotments
(a) * * *
Lands not subject to allotment; distribution of revenues from mineral springs parcel
(b) In no event shall the following tribal lands be subject to allotment, and they shall henceforth be set apart and designated as tribal reserves for the benefit and use of the band:
Cemetery numbered 1, block 235, section 14, township 4 south, range 4 east.
Cemetery numbered 2, as now constituted pursuant to secretarial order, comprising approximately two acres.
Roman Catholic Church, as now constituted pursuant to secretarial order, comprising approximately two acres.
Mineral Springs, lots 3a, 4a, 13, and 14, section 14, township 4 south, range 4 east: Provided, That no distribution to member of the band of the net rents, profits, and other revenues derived from that portion of these lands which is designated as "parcel B" in the supplement dated September 8, 1958, to the lease by and between the Agua Caliente Band of Mission Indians and Palm Springs Spa dated January 21, 1958, or of the net income derived from the investment of such net rents, profits, and other revenues or from the sale of said lands or of assets purchased with the net rents, profits, and other revenues aforesaid or with the net income from the investment thereof shall be made except to those enrolled members who are entitled to an equalization allotment or to a cash payment in satisfaction thereof under sections 951–958 of this title or, in the case of such a member who died after September 21, 1959, to those entitled to participate in his estate, and any such distribution shall be per capita to living enrolled members and per stirpes to participants in the estate of a deceased member.

San Andreas Canyon, west half southeast quarter, southeast quarter southeast quarter section 3, township 5 south, range 4 east.
Palm Canyon, south half and south half north half section 14, township 5 south, range 4 east; all section 24, township 5 south, range 4 east.
Tahquitz Canyon, southwest quarter section 22, township 4 south, range 4 east; north half section 28, township 4 south, range 4 east.
Murray Canyon, east half section 10, township 5 south, range 4 east.
(c) * * *
(d) * * *"

interest of non-Indian lessees in Indian lands is unlawful because of:

1. Article I, Section 8, Clause 3 of the Constitution of the United States of America;
2. Section 1 of the Fourteenth Amendment to the Constitution of the United States of America;
3. P.L. 83–280, Aug. 15, 1953, 67 Stat. 589, 28 U.S.C. section 1360 and amendments thereto.

Defendant COUNTY supports its power to impose possessory interest taxes claiming authorization in 25 U.S.C. section 398c or 28 U.S.C. section 1360.

## THE TAX INVOLVED AND ITS IMPACT

California Revenue and Taxation Code Section 107 provides in pertinent part:

"§ 107 Possessory interests; * * *

'Possessory interests' means the following:

(a) Possession of, claim to, or right to the possession of land or improvements, except where coupled with ownership of the land or improvements in the same person.

(b) Taxable improvements on tax-exempt land.

* * * "

The simple statement of the statutory provision for taxation of possessory interest describes two classes of property rights—(1) the aggregate of rights, duties, privileges and immunities accruing to an individual (or other legal entity) out of *possession* of an underlying fee interest in land or (2) improvements on an otherwise tax-exempt fee interest. We are not here concerned with the legal or beneficial ownership of the underlying fee interest in land. It is the possession of tax-exempt Indian lands owned by non-Indians. In other words, it is the property interest owned by the non-Indian that is the subject of this litigation and it is that property interest that defendant attempts to reach by its assessment, levy and collection of a possessory interest tax.

California Revenue and Taxation Code Section 107 provides only for the assessment, levy and collection of a tax from the owner of a possessory interest defined therein. Its impact—at least directly—in terms of the various interests considered here is upon the non-Indian lessee of tax-exempt Indian lands.

■ Plaintiffs claim—through testimony of experts—that the defendant's tax must be paid by the Indian owners directly by rent adjustments or at least indirectly in considering negotiations for future leases by adjustment of their return upon valuation of their tax-exempt land. Assuming that the economic burden of this possessory interest tax falls eventually upon plaintiffs, it is not—for that reason—invalid. United States v. City of Detroit, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424; Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3; Graves v. New York, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927; James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155.

## CLAIMS OF IMMUNITY

### IMMUNITY UNDER THE COMMERCE CLAUSE

Article I, Section 8, Clause 3 of the Constitution of the United States provides in its pertinent part:

"Section 8. The Congress shall have Power * * *;

* * * * * *

To regulate Commerce * * * with the Indian Tribes;"

■ The nature of Congressional power in Indian matters is paramount and plenary. Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251; United States v. Kagama, 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228; Worcester v. Georgia, 6 Pet. 515, 8 L.Ed. 483. But statement of the power does not end the inquiry. It must be ascertained that the activity or subject matter of the inquiry is "commerce."

Defendant herein asserts its taxing power against the property right of a

non-Indian. It does not claim nor assert any right to tax the underlying fee interest of the Indian. "Commerce" is a broad term given broad meaning by the Supreme Court. United States v. South-Eastern Underwriter's Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440; Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160. No decision has given to a property right created out of contractual relations the status of commerce.

■■■ Plaintiffs claim that Congress has pre-empted Indian affairs by its comprehensive provisions of Title 25 United States Code and its regulations comprising a full volume of 25 Code of Federal Regulations. Pre-emption can be no broader than the power—the power to regulate commerce. The subject matter of the tax herein is the property right of a non-Indian which—though it may have resulted from Indian commerce—is neither "commerce" nor a contemplation of commerce. The relationship is one of lessor-lessee providing for no more "trade" than the payment of rent for use of Indian lands.

## IMMUNITY PURSUANT TO P.L. 83–280, AUG. 15, 1953, 67 STAT. 589, 28 U.S.C. SECTION 1360 AND AMENDMENTS THERETO

■■■ Plaintiffs claim that defendant is precluded from taxing the possessory interest of non-Indian lessees on tax-exempt Indian lands because of 28 U.S.C. § 1360 [P.L. 83–280, Aug. 15, 1953, 67 Stat. 589].

Title 28 U.S.C. § 1360 provides in its pertinent part:

"(a) * * *

(b) Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property * * * belonging to any Indian or any Indian tribe, band, or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States; * * *."

This statute concedes tax immunity to real or personal property *belonging to an Indian* imposing the further condition that the property be held in trust by the United States or subject to some Federal restraint on alienation. The property right attempted to be taxed herein does not belong to an Indian but to a non-Indian.

Defendants conversely ground their jurisdiction over this property right in this very same section. Subsection (a) of § 1360 provides in pertinent part:

"(a) * * * those civil laws of such State or Territory that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory."

California Revenue and Taxation Code Section 107 is a civil law of general application to private persons and private property and pursuant to 28 U.S.C. § 1360(a) has the same force and effect upon non-Indians within the Indian country as it has elsewhere within the State of California.

## IMMUNITY BY REASON OF THE TRUST STATUS OF INDIAN LANDS

■■■ The plight of the Indian in American History needs no articulation here. If despair has any meaning, its application to Indians in the late 19th century is an understatement. Somewhat out of a sense of guilt—but more hopefully out of a sense of justice—the Congress passed the Mission Indian Relief Act of January 12, 1891 (26 Stat. 712) providing that the United States was to hold "in trust for the sole use and benefit" of the Indians certain lands, the subject of this action.

Plaintiffs maintain that the trust created by the Mission Indian Relief Act must reserve to the Indians an economic advantage which is being destroyed by the imposition of a possessory interest tax upon the non-Indian lessees. That argument can be sustained only with

the sense of guilt approach. The history of this Republic chronicles a plethora of instances—both Indian and non-Indian—of the loss of vast land-holdings through the vicissitudes of mortgage foreclosures and tax-sales. The purpose of the trust created is to assure the beneficiary of an estate "free of all charge or incumbrance whatsoever."

■ Plaintiffs make much of the value of the immunity of their trust lands from taxation. They discuss it in terms of a vested property right—and it is so held in Choate v. Trapp, 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941. But property only has "value"—in the sense propounded by plaintiffs' experts—if it can be sold or otherwise alienated for a valuable consideration. But here plaintiffs cannot—by conveyance of the fee upon termination of the trust status—transfer any tax immunity or tax exemption. The economic advantage or value of the tax immunity is one that can be exploited solely by the Indian and then only during the trust period.

■ The economic effect upon the so-called economic advantage created by the trust is greatly exaggerated because the tax complained of by these plaintiffs is substantial. The amount of the tax does not determine its validity. Here the tax is substantial because the property interest taxed is substantial. A possessory interest in a leasehold of 99 years is tantamount to an estate in fee for assessment purposes. De Luz Homes, Inc. v. County of San Diego, 45 Cal.2d 546, 290 P.2d 544; County of Riverside v. Palm-Ramon Development Co., 63 Cal.2d 534, 47 Cal.Rptr. 377, 407 P.2d 289.

A finding of validity of a possessory interest tax in this situation is compelled by United States v. Detroit (supra), where the Supreme Court held a possessory interest tax valid where imposed upon the use of tax-exempt real property leased from the United States by a private person. Plaintiffs would have the Court read the Detroit case (supra) only to give standing to plaintiffs to prosecute this action. Although sufficient authority for that contention, it would disregard the clear import of the case to deny its application to the tax here because Indians are involved. A trustor can grant no greater property than he owns. If the Government could not prevail in the Detroit case (supra) its wards and beneficiaries cannot prevail here.

Detroit (supra) gives a simple answer to all of plaintiffs arguments when the Court says at page 472 of 355 U.S. at pages 477–478 of 78 S.Ct.:

" * * * [H]ere we have a tax which is imposed on a party using tax-exempt property for its own 'beneficial personal use' and 'advantage'.

It is undoubtedly true, as the government points out that it will not be able to secure as high rentals if lessees are taxed for using its property. But * * *, the imposition of an increased financial burden on the Government does not, by itself, vitiate a state tax."

That Congress could have extended the tax immunity to plaintiffs' lessees is no answer. Without deciding whether it could or not the simple fact is it did not.

See also: Oklahoma Tax Commission v. Texas Co., 336 U.S. 342, 69 S.Ct. 561, 93 L.Ed. 721; Thomas v. Gay, 169 U.S. 264, 18 S.Ct. 340, 42 L.Ed. 740.

## IMMUNITY BECAUSE OF SOVEREIGNTY OF INDIAN TRIBES

■ Plaintiffs claim that as a sovereign they have imposed a tax and defendant's tax is therefore double taxation. This tribal tax was first imposed in September 1967. Without deciding the validity of the tribal tax, it appears that its enactment was more in aid of litigation than any serious attempt to raise revenue for tribal operations.

In any event the question of sovereignty is well answered in Acosta v. San Diego County, 126 Cal.App.2d 455, 272 P.2d 92 and needs no further articulation here.

## JURISDICTION

■ The jurisdiction of this Court to hear this matter is found in Title 28

U.S.C. section 1362. Plaintiffs have standing to bring this action to determine application of the provisions of California Revenue and Taxation Code Section 107 to property claimed immune under Federal Constitutional and statutory law. Cf. United States v. City of Detroit (supra).

Plaintiffs press on the Court Squire v. Capoeman, 351 U.S. 1, 76 S.Ct. 611, 100 L.Ed. 883; Snohomish County v. Seattle Disposal Company, 70 Wash.2d 668, 425 P.2d 22; Your Food Stores Inc. v. Village of Espanola, 68 N.M. 327, 361 P.2d 950; and Warren Trading Post Company v. Arizona State Tax Commission, 380 U.S. 685, 85 S.Ct. 1242, 14 L.Ed.2d 165; as dispositive of the issues presented herein. Reading those cases makes them each distinguishable. *Squire* (supra) involves proceeds of Indian property in the hands of an Indian—*Warren Trading Post Company* (supra) and *Your Food Stores Inc.* (supra) concern what is unmistakably Indian commerce in its classic sense and *Snohomish County* (supra) is a consideration of encumbrances upon the *use* of Indian land.

This memorandum opinion shall serve as findings of fact and conclusions of law pursuant to Federal Rules of Civil Procedure Rule 52(a).

Judgment shall accordingly be for defendant and the Clerk is instructed to so enter it.