BILL LOCKYER Attorney General ANTHONY S. DA VIGO Deputy Attorney General
THE HONORABLE MARSHALL S. RUDOLPH, COUNTY COUNSEL, MONO COUNTY, has requested an opinion on the following questions:
1. Is land owned by an Indian Housing Authority pursuant to a grant deed from the United States Department of Housing and Urban Development, currently in use as a federally assisted low-income housing project for Native Americans, which is neither an Indian reservation nor an Indian allotment, a "dependent Indian community" under the circumstances presented?
2. Do the police and taxing powers of the state and its political subdivisions that are applicable generally to housing authorities also apply to the land of an Indian Housing Authority which is not "Indian country" but is currently in use as a federally assisted low-income housing project for Native Americans?
 CONCLUSIONS
1. The land owned by an Indian Housing Authority pursuant to a grant deed from the United States Department of Housing and Urban Development, currently in use as a federally assisted low-income housing project for Native Americans, which is neither an Indian reservation nor an Indian allotment, is not a "dependent Indian community" under the circumstances presented.
2. The police and taxing powers of the state and its political subdivisions that are applicable generally to low-income housing projects of housing authorities also apply to the land of an Indian Housing Authority which is not "Indian country" but is currently in use as a federally assisted low-income housing project for Native Americans.
 ANALYSIS
The two inquiries presented for resolution concern (1) the federal status of certain real property owned by an Indian Housing Authority and used as a low-income housing project for Native Americans and (2) whether state civil laws and county ordinances pertaining to land use and planning, building standards, health and sanitation regulations, and property taxes apply to such property. For purposes of this opinion, an "Indian Housing Authority" is one that is established by exercise of the power of self government of an Indian Tribe independent of state law or by operation of state law providing specifically for housing authorities for Indians and authorized to engage or assist in the development or operation of low-income housing for Indians under federal law. (See24 C.F.R. § 1000.10(b) (1999).)
1. Dependent Indian Community
The first question to be resolved is whether a housing project owned and operated by an Indian Housing Authority constitutes a "dependent Indian community" for purposes of federal law. We conclude that it does not.
Preliminarily, we note that a "dependent Indian community" is one form of "Indian country." The term "Indian country" is defined in title 18 of the United States Code, section 1151[1] as follows:
 ". . . [T]he term `Indian country' . . . means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government . . ., (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired land thereof, and (c) all Indian allotments, the Indian titles to which have not been extinguished. . . ."[2]
Subdivision (a) of section 1151 includes within the scope of Indian country not only those lands to which the Indians retain their original right of possession, but also those tracts which, being a part of the public domain, have been set apart as Indian reservations. (Donnelly v. United States (1913) 228 U.S. 243, 268-269.) Subdivision (c) of the statute refers to and includes Indian allotments, consisting of parcels of land created out of a diminished Indian reservation and held in trust by the federal government for the benefit of individual Indians. (United States v. Pelican (1914) 232 U.S. 442, 449.)
Subdivision (b) of section 1151 is the statutory provision requiring our analysis in determining the characteristics of a dependent Indian community. In Alaska v. Native Village of Venetie Tribal Government, supra, 522 U.S. 520, the United States Supreme Court recently interpreted the scope of subdivision (b), stating:
 ". . . Since 18 U.S.C. § 1151 was enacted in 1948, we have not had an occasion to interpret the term `dependent Indian communities.' We now hold that it refers to a limited category of Indian lands that are neither reservations nor allotments, and that satisfy two requirements — first, they must have been set aside by the Federal Government for the use of the Indians as Indian land; second, they must be under federal superintendence." (Id., at p. 527.)
As to the first requirement of a "federal set aside," the court stated: "The federal set-aside requirement ensures that the land in question is occupied by an `Indian community'" (id., at p. 531, fn. omitted) and "reflects the fact that because Congress has plenary power over Indian affairs, see U.S. Const., Art. I, § 8, cl. 3, some explicit action by Congress (or the Executive, acting under delegated authority) must be taken to create or to recognize Indian country" (id., at p. 531, fn. 6). As for the second requirement, the court explained that "the federal superintendence requirement guarantees that the Indian community is sufficiently `dependent' on the Federal Government that the Federal Government and the Indians involved, rather than the States, are to exercise primary jurisdiction over the land in question." (Alaska v. Native Village of Venetie Tribal Government, supra, 522 U.S. at p. 531, fn. omitted.)
We are advised that the United States Department of Housing and Urban Development sold the property in question to the Indian Housing Authority. The deed does not restrict alienation of the property to non-Indians or its use solely for Indian purposes, but does require that the property be used as the site of a federally assisted low-income housing project for a minimum period of 40 years. Following that period, all restrictions on use will terminate, and title cannot revert to the federal government.
Under these circumstances, has the federal set aside requirement been satisfied? The requirement is not satisfied merely because of tribal ownership of the land or because of its proximity or importance to a tribe. (Blunk v. Arizona Dept. of Transp., supra, 177 F.3d at pp. 882, 884; Narragansett Indian Tribe v. Narragansett Elec. Co. (1st Cir. 1996)89 F.3d 908, 919-922.) Since here the land was transferred to direct Indian ownership without prohibiting alienation to non-Indians or restricting use to Indian purposes, the federal set aside requirement is not satisfied. (Alaska v. Native Village of Venetie Tribal Government, supra, 522 U.S. at pp. 532-533; Blunk v. Arizona Dept. of Transp., supra, 177 F.3d at pp. 883-884.)
Moreover, the federal superintendence requirement has not been met either. The fact that the land in question is currently in use as a federally assisted low-income housing project for Native Americans does not in itself, or in conjunction with extensive social programs and benefits, establish the requisite degree of federal superintendence. (See Alaska v. Native Village of Venetie Tribal Government, supra, 522 U.S. at p. 534.) Indeed, federal law supports the right of Indian self-determination rather than federal superintendence with respect to the operation of the housing project by the Indian Housing Authority. (See 25 U.S.C. § 450, 450a, 4101.) We thus do not find the active federal control over the subject land that would be necessary to satisfy the federal superintendence requirement for establishing a "dependent Indian community." (See Alaska v. Native Village of Venetie Tribal Government, supra, 522 U.S. at pp. 533-534, citing by way of comparison United States v. McGowan (1938) 302 U.S. 535, 537-539 [superintendence found where the federal government had retained title to the land to protect the Indians living there]; United States v. Pelican, supra, 232 U.S. at p. 447 [superintendence found where allotments were "under the jurisdiction and control of Congress for all governmental purposes, relating to the guardianship and protection of Indians"]; United States v. Sandoval (1913) 231 U.S. 28, 37 [superintendence found where statute placed Indian land under the "absolute jurisdiction and control of the Congress of the United States"].)
It is concluded that land owned by an Indian Housing Authority pursuant to a grant deed from the United States Department of Housing and Urban Development, currently in use as a federally assisted low-income housing project for Native Americans, which is neither an Indian reservation nor an Indian allotment, is not a "dependent Indian community" under the circumstances presented. Accordingly, the land does not qualify as "Indian country" pursuant to the terms of section 1151.
2. State and Local Civil Laws
We next consider the applicability to the property in question of state and local civil regulations and the assessment of property taxes.[3]
With respect to civil regulations generally, primary jurisdiction over land that is "Indian country" rests with the federal government and the Indian tribe inhabiting it, and not with the states. (Cf., South Dakota v. Yankton Sioux Tribe (1998) 522 U.S. 329, 343.)[4]
In any event, we are concerned here with property owned by an Indian Housing Authority that is not "Indian country," as determined in answer to the first question. The land is neither held in trust by the United States nor subject to a restriction against alienation to non-Indians. Title to the land has been conveyed to the Indian Housing Authority. Under these circumstances, it must be conceded that the property is subject to state civil laws and county ordinances pertaining to land use and planning, building standards, and health and sanitation regulations (See Blunk v. Arizona Dept. of Transp., supra, 177 F.3d at pp. 882-884; Narragansett Indian Tribe v. Narragansett Elec. Co., supra, 89 F.3d at p. 915) and state and local property taxation (Oklahoma Tax Comm'n v. Chickasaw Nation (1995) 515 U.S. 450, 453; Oklahoma Tax Comm'n v. Sac and Fox Nation (1993) 508 U.S. 114, 124-126; Kake Village v. Egan (1962)369 U.S. 60, 74-76; Agua Caliente Band of Mission Ind. v. County of Riverside (C.D.Cal. 1969) 306 F. Supp. 279, 284, affd. (9th Cir. 1971)442 F.2d 1184, cert. den. 405 U.S. 933, rehearing den. 405 U.S. 1033, rehearing den. 409 U.S. 901) to the same extent and subject to the same conditions as would apply to low-income housing projects owned by entities other than an Indian Housing Authority and operated for the benefit of non-Indians.
It is concluded that the subject housing project of the Indian Housing Authority is not exempt from state and local police and taxing powers solely by virtue of its use as a federally assisted low-income housing project for Native Americans. Whether the land is otherwise exempt from ad valorem property taxation would depend upon applicable state law. (See, e.g., Cal. Const., art. XIII, § 4, subd. (b); Rev. Tax. Code, § 214)[5]
[1] All references hereafter to title 18 of the United States Code are by section number only.
[2] While this definition of "Indian country" relates specifically to federal criminal jurisdiction, it has also been recognized as generally applicable to matters pertaining to civil jurisdiction. (See Alaska v. Native Village of Venetie Tribal Government (1998) 522 U.S. 520,526-527; DeCoteau v. District County Court (1975) 420 U.S. 425, 427, fn. 2; Blunk v. Arizona Dept. of Transp. (9th Cir. 1999) 177 F.3d 879,882.)
[3] The scope of this opinion is limited to determining whether the current use of the property for the benefit of Native Americans by an Indian Housing Authority affects the general applicability of state and local civil and tax laws to low-incoming housing projects owned and operated by housing authorities.
[4] Federal law, however, allows California's civil law to apply to "Indian country" within the state. (28 U.S.C. § 1360.)
[5] In particular, we note the possible applicability of Revenue and Taxation Code section 237, which exempts from property taxation the property of a tribally designated housing entity if specified conditions are met.